Good afternoon. We have one case on the calendar today. This is a case that had been adjourned from earlier in the month, and so I guess technically our term is over, but we're still working, so we put this over until today. I'm told everybody's here, so we have a lot of 10 minutes for each side, and I gather, Mr. Vita, you've reserved three minutes of rebuttal. Is that correct? That is correct, Your Honor. Okay, so that gives you seven minutes out of the gate. We'll start with you, and then we'll hear from Mr. Lebeau. Am I saying that right? Lebeau? Lebeau? Lebeau. Thank you. Sorry about that. Your Honors, good afternoon. I recognize that I'm coming in at a late stage in the case that's been before this Court two times, and where there's been a number of orders that have been affirmed. At this point, we're dealing with a very specific order, which involves an order of incarceration, and I have an order of incarceration that my client, at the time the motion was made, did not submit papers in opposition. At this point, Judge, I believe, notwithstanding that fact, the Court should address the issues involving that order of imprisonment. On the matter of manifest injustice? Well, your client's not in custody, right? At this point, he's not in custody. So what's holding it up? I mean, it seems to me that there were requests for stays. Many, 14, I think, were granted, right, over the long haul, and so what's the order? There was an arrest warrant that was issued, which has not, at this point, been executed. Why doesn't he comply? I mean, after all, he has had 120 times. The judge has been about as gentle as a judge could be in putting things off. That's a big deal. Judge, one of the things that has changed since the order was issued on January 22 of 2020 was there has, in fact, been substantial compliance. Well, he's done any number of things each time when he was threatened with jail, and not until he was, and there's still this thing, these items as to what happened in the past, and well, why not do it? I mean, what the heck? As explained to me by Mr. Salt, the items involve thousands of documents, and he's also provided evidence to the court regarding his medical situation, which has impaired his ability to respond to these interrogatories. How does it impair his ability to respond to these? I mean, he is ill, but he is 62, and these are not dramatically difficult things. I think the volume of the documents that would have to be produced to comply with the interrogatories and the court order, coupled with his medical impairments, have made it difficult for him to comply with the court's order. But these orders predated COVID. I mean, these orders go back a long, long way. That is correct. You're suggesting his medical condition prevented him from doing this at every stage, or just more recently? No. Judge, my argument is this. Obviously, the orders go back a number of years. I would say since the order was issued on January 22nd, 2020, which required a purge date, March 23rd of 2020, a lot has happened in the world since then, primarily- Yes, and it is true that we have to look at the situation now, because this is civil contempt, and so whether putting him in jail will lead to a compliance or not. So that, you know, the fact that he might have complied two years ago but didn't isn't really relevant, but I still don't see what it is that keeps him at least from doing some of this. I share the court's concerns, and I would have liked to have been able to present the court with some document for the presentation. I know. We can't blame you. Judge, the other point I want to make, and this addresses the issue in general involving who the party is, and it may explain the delay of compliance and even the lack of compliance, not to justify it, but I just want to present to the court. I've always learned from law school that you have a corporation as a party, and in this case, Spirit of Utah Wilderness Inc. is a party, and an individual separate and apart from that. You have Jeffrey Saltz was an individual, and it's almost like in this case they've been treated as one and the same, so that in order as to a corporation- Well, how can the corporation comply if Mr. Saltz is is resisting the compliance? Well, let me put it this way. The corporation can comply, and I believe has complied. The issue in this case is Mr. Saltz as an individual has claimed, and Your Honor is aware of this because it's been before the court before, that as an individual, he never had his day in court to assert his individual entitlement and right to a particular trademark. In other words, there was a- But that's not before us now. It may be, but that's been decided any number of In fact, I read Your Honor's decision. One of the issues that the client raised before Judge Roman again in his motion that was treated as a Rule 60 motion that isn't subject to disappeal is that, wait a minute, Judge. You got to look at this again, because I didn't have my day in court. I didn't have a chance to present my arguments. I didn't have a chance to as a party to litigate these issues, all right, and I'm not Spirit of Utah Wilderness Inc. I am Jeffrey Saltz. I want to be heard. If I'm going to be locked up for doing something, I want to at least have my day in court so you have a ruling on the merits. And so in that sense, Judge, I believe the fact that he did not have his day in court individually, all right, may have been an impetus for his lack of compliance or delay in compliance with some of these document production issues. All that might be relevant if this were punitive. If it isn't punitive, it is simply to make him comply, then the fact that he doesn't mean badly doesn't matter. The court is just asking him to win. My hope is this, that this court will give Mr. Saltz an opportunity to remand back to Judge Ramon, based upon the fact that there have been changes in circumstances, based upon the fact that there has been substantial compliance, based upon the fact that he's not in custody now, to give him the opportunity to address that issue. And I realize this has been many months, many years, but I think at this stage of the litigation, that may be an appropriate ruling for the Your Honor's to make. All right. Thank you, Mr. Vita. You've reserved three minutes for rebuttal. We'll now hear from Mr. Laveau. And I should state you can take off your mask if you wish. You're not required to. Thank you, Your Honor. My name is Jason Laveau of the law firm Wachtell Mystery LLP, attorneys for the plaintiff, appellee, Waterkeeper Alliance. I'm joined here today by my colleague, Mark Litt. As established in Waterkeeper's opposition brief, the district court has wide discretion in fashioning a remedy for civil contempt. And here there was no abusive discretion in the district court's carefully reasoned order. Yeah, but let me ask you, why are you doing this? What use is this to you at all? He can't pay. That's been shown that he can come in and he cannot pay. And you're asking for some things which, as far as I can tell, could only be relevant to the amount of payment. But if he can't pay, why are you doing it? It may be the court wasn't being punitive, but it does look as though you're trying to be punitive. Yes, Your Honor. We don't know the full, Waterkeeper does not know the full extent of Salt's infringement. We know that he's caused damage to Waterkeeper's reputation, but it's not clear exactly what needs to be done to ameliorate this damage. And to the extent that Waterkeeper seeks a list of past infringements. How does that help you? Well, that would help them know where to target their efforts and where to mitigate damages. There's also been an inability for Waterkeeper to assess the truthfulness, the veracity of the financial affidavit that the appellant provided without responses to the document requests and interrogatories that were ordered by the court. The unauthorized use of Waterkeeper's decades for a trademark for over a decade has eroded Waterkeeper's credibility in the Utah area. How difficult is it for you to find these things on your own rather than spending money litigating? Again, I must say I'm very puzzled by this case and everything that's happened to it, including the delays. But one of the things that puzzles me is why so much money is being spent to try to get something that doesn't seem that useful and that you could get on your own. Your Honor, Waterkeeper is diligent in policing its trademarks, but it can't police the entire world. And only so much comes to Waterkeeper's attention, which can readily be found. And Salt is really the only one who knows what he did, and the court has ordered him to tell us. And that is why we're here. Mr. Salt infringed, and the burden is on him to show. And he has not met that burden. So what you're looking for, as I understand it, and you can correct me if I'm wrong, I thought that where we were is that the court has ordered him to pay a certain amount per infringement. And you need to know how many infringements there were to calculate that amount. Is that the story? Well, Your Honor, at this point, the financial penalties that were imposed are out there. They certainly have not been satisfied. But what we're concerned about is the list of past infringements so that Waterkeeper can go about and correct and seek to remedy. Well, let me try to follow this out. We know, you know, I take it that he has used your marks in operating various accounts, right? Email accounts and things like that. He has also used it in the public domain, in testimony that he's given at hearings, you know, and elsewhere. You know, it's been used in... So I'm trying to figure out what you need. If we know what the email accounts are, couldn't you get his, the court orders the internet service provider to provide you with a list of who he emailed using that account, that infringing account? Certainly, the court could order something like that. But, you know, Mr. Salt has admitted that he has this information and can provide it. I understand. And I must admit, I am equally puzzled as my colleagues as to what he would need to do other than instruct an internet service provider to turn over certain records. And it doesn't seem to me to be that laborious a task to compile some of this material. Indeed, I imagine there would be some way in which he could turn over access to those accounts to you and you could then go and collect all of those. It's not a matter of he has to print out thousands of emails, right? That's correct, Your Honor. If he would provide access to the information or if he would, you know, provide access to the email accounts where the information is located, that would certainly be a way that we could address his contempt here. I'm just trying to figure out also then, what is it that you're going to do? So if he's testified before the Utah legislature or something five years ago using, claiming to be the Great Salt Lakekeeper, and he's the not so great, not really Lakekeeper, what are you going to do to mitigate that? You're going to write a letter to the legislature saying, remember this guy who came before your committee five years ago on something that you've probably forgotten all about already? Well, he wasn't entitled to claim to be that. Reaching out to the people who have been affected and have been misled by the infringement will certainly be part of Waterkeeper's effort, but the other part is really just, you know, the fact that this is... You really mean us to believe that it is worth your time and money going back to things like that five years ago to protect your trademark, Your Honor? My client is very diligent about protecting its reputation and pursuing trademark infringement. Okay, I get that. And I suppose also, he may not have the money now, but first of all, as you say, you want to follow up and make sure that's really true. And secondly, he could win the lottery tomorrow and then you'd get your compensatory damages that the I take it it resides with the marshal. It's just entirely up to the marshal when, if ever, to execute this, and you have no ability to ask for it to be done or to ask for it not to be done? Waterkeeper certainly intends to ask for it to be done. And part of that is, you know, us recently having the stay expire and now, you know, the expedited appeal... It's not so recently. It's been a while. It was in April, it expired. And then there was an emergency motion that was denied. Yes, it was denied. It's nearly July now. So it doesn't seem like anybody's sort of warming up the van to go pick them up. So I mean, it almost feels as though there's a de facto stay, even though the stay was denied. Do you have any more insights into that? There's nothing in the record. No, I don't have any more insights into that, Your Honor. But I will say that Waterkeeper does intend to... In an odd way, when you asked for health reasons to delay the argument and they didn't oppose, there seemed to be almost an understanding that you wouldn't get... I mean, why wouldn't they oppose it if their client was likely to go to jail? And you would win the case without arguing it. When the extension was requested, there was an understanding that we would not seek to execute it during that time period of this day, of the adjournment. But I think what's important here is that the district court has been very gentle, as Judge Calabrese pointed out, and patient in terms of allowing Mr. Salt opportunities after opportunity after opportunity to comply with the court's orders. He granted at least 15 requests to extend the deadline. And there has to be consequences. And in this situation, Mr. Salt has admitted that he has made no effort to review or produce these materials or the required list of past infringements. He hasn't produced a single page since the court first ordered him to do so in 2017. I think the inference that needs to be drawn from this is an inescapable one, that Mr. Salt's conduct and his attitude toward this tribunal and his proceedings, that he has never intended and does not presently intend to purge his contemptuous conduct, and that incarceration is necessary in order to force him to comply. Well, do you think that will make a difference? I mean, it's hard for you to answer that question, I suppose, but you know him longer than we do. Mr. Salt, you know, he holds the keys to his own freedom here. You know, if he was willing to comply, if he expressed willingness, you know, to purge his contempt, then yes, I believe that it would make a difference. Because that is the only thing that has caused him to take any of the actions that the district court has required. Thank you. Thanks very much. We'll hear from Mr. Vita for three minutes of rebuttal. I don't personally see how putting, most of my work is criminal defense work. This is a new to me, it's a civil case. I don't see personally how somebody being placed in the custody of the Bureau of Prisons is going to facilitate providing documents. Well, but isn't it the case that if your client starts to comply, you can go back to the district court and say, he's doing the best he can now, and he's no longer in contempt? I mean, civil contempt is always curable. Right. So if we affirm, isn't it the case that you can take any action that is to comply while he's out is reasonable and something that could be accomplished? I think once he's in BOP custody, I think complying will be an impossibility. Oh, come on. I mean, I don't understand why there can't be some negotiated resolution to at least some of this. If he's incapable physically of pushing buttons on his computer to generate the materials that need to be provided, then he could certainly offer to provide passwords or whatever other information is necessary so that Waterkeeper can access those records. This is not beyond the realm of right now working out some way in which good faith can be shown by substantially complying with the production of records. And once he's in prison, he could do that if he's not willing to do it beforehand. And frankly, although I appreciate your efforts on his behalf, and I can't fault you for this, when you argued at the end that, well, the thing is, he feels he hasn't gotten his day in court. Well, he can feel that all he likes. We see any number of pro se in fact, courts have decided that for whatever reason he wasn't entitled to that particular day in court or he waived that day in court. That's all water under the bridge. And what you're basically saying is that precisely because he feels he was treated unfairly, he is refusing consciously to comply. That's a very different thing than being physically unable to comply. And if that's his Maybe in the eye of God, he is one. But in the eye of the courts, that just means he's someone who is refusing to comply because he thinks the court got something wrong, and therefore he's entitled not to. And I don't see how that is any kind of excuse in a civil contempt situation. Judge, the other point I want to make is in regard to the, I guess, the damage to the plaintiff relative to them having to get this past information. One of the things he did do, he complied with the order where he had to do a posting publicly for a period of two years, but he did complete, totally acknowledging the fact that he had no claim to these particular marks, which was done pursuant to order. So I think to the extent that the plaintiff is concerned about their present reputation- There has been some mitigation done already by his compliance with those aspects of the court's order. And I would think that, I mean, I recognize that the plaintiff is a national organization, a large organization. I'm certain that they have many contacts in Utah, a presence there, such that if there was any concern about any impact upon their trademark- But none of that matters. What matters is whether your client is trying to comply or not. And if your argument is, if he goes to jail, he will find it difficult, as Judge Lynch has said, you and the other side can talk. And it isn't as if you haven't talked, because you've talked about extension and not going to jail. And if you can talk about that, which is much more difficult, it shouldn't be that difficult about talking about getting who pushes the button. I, Judge Calabrese, I could not agree more. And certainly I will continue whatever dialogue I need to have with the other side on this issue. Thank you. Thank you very much. All right. Well, thank you both. We will reserve decision. That concludes the arguments for the day and I guess for the term. But I want to thank the corporate deputy and the lawyers for an interesting discussion. With that, we'll adjourn court. And we've been rough on you, but that's our job. Your job is yours. I've seen rougher. Court stands adjourned.